IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00250-PAB-KLM

MICHAEL MILLIGAN,

      Plaintiff,

v.

LOU ARCHULETA,
CHARLES SANCHEZ,
LANCE MIKLICH, and
KEVIN FURTON,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Second Amended Complaint** [Docket No. 44; Filed May 22, 2012] (the "Motion"). The Motion is referred to this Court for recommendation [#46]. On July 12, 2012, Plaintiff filed a Response [#50] in opposition to the Motion. Defendants did not file a Reply. The Court has reviewed the briefing, the case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court respectfully **recommends** that the Motion [#44] be **GRANTED** and that Plaintiff's Second Amended Complaint [#41-1] be **DISMISSED without prejudice**.

## I. Background

Plaintiff is a state prisoner in custody of the Colorado Department of Corrections ("CDOC") and is presently incarcerated at Colorado Territorial Correctional Facility

("CTCF") in Canon City, Colorado. *2ⁿᵈ Am. Compl.* [#41-1] at 2.  Plaintiff initiated this lawsuit *pro se* pursuant to 42 U.S.C. § 1983 on January 31, 2011.  *Compl.* [#1] at 4.

According to the Second Amended Complaint, Plaintiff asserts that he worked for CTCF's maintenance department plumbing crew from April 2009 through September 24, 2010, regularly receiving excellent work ratings during that period.  *Id.* at 5.  On August 22, 2010, CDOC inmate Douglas Alward ("Alward") escaped from Sterling Correctional Facility. *Id.*  Although Mr. Alward escaped from a different facility from that in which Plaintiff is incarcerated, Defendant Lou Archuleta ("Archuleta"), the Director of Offender Services for CDOC, thereafter reevaluated all CDOC prisoners' escape risk classifications and, in that process, redesignated Plaintiff as an escape risk.  *Id.*

On September 24, 2010, Plaintiff went to work and was notified that his gate pass had been pulled, which prevented him from accessing the areas in which his job was located.  *Id.*  He was informed that his job had not been taken from him but that he would not be permitted in his work area until after additional security measures were installed, including an additional security perimeter fence, razor wire, and a detection system.  *Id.* Plaintiff asserts that he and two other white offenders who worked in the same area were designated as escape risks while no offender of any other race received the same designation.  *Id.* at 6.  Plaintiff later filed a grievance regarding his designation as an escape risk.  *Id.* at 9.  He alleges that, in response to his grievance, the facility job board, comprised of Defendants Sanchez, Miklich, and Furton, took away his job and put him in vocational janitorial school.  *Id.*

In short, Plaintiff asserts four causes of action against four CDOC employees in their individual capacities: (1) racial discrimination/equal protection violation of the Fourteenth

Amendment against Defendant Archuleta ("Claim One"); (2) equal protection violation of

the Fourteenth Amendment against Defendant Archuleta ("Claim Two"); (3) retaliation in

violation of the First Amendment against Defendants Charles Sanchez ("Sanchez"), Lance

Miklich ("Miklich"), and Kevin Furton ("Furton") ("Claim Three"); and (4) a "state tort claim

for defamation and injurious falsehoods" against Defendant Archuleta ("Claim Four").  *2nd*

*Am. Compl.* [#41-1] at 5-10.   Plaintiff seeks punitive and exemplary damages against

Defendant Archuleta and entry of a declaratory judgment against all Defendants finding in

Plaintiff's favor on his causes of action.  *Id.* at 13.

Defendants seek dismissal of Plaintiff's entire lawsuit.   *Motion* [#44].   First, they

assert that Plaintiff has not stated a viable claim regarding any of his four causes of action.

*Id.* at 4-14.   Second, they assert that Plaintiff is not entitled to either compensatory or

punitive damages.  *Id.* at 14-15.  Further, as discussed below, the Court *sua sponte* raises

a subject-matter jurisdiction issue relating to part of this action.

## II.  Standard of Review

### A.      Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the

Court has jurisdiction to properly hear the case before it.   Because "federal courts are

courts of limited jurisdiction," the Court must have a statutory basis to exercise its

jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); see Fed. R. Civ. P.

12(b)(1).   Statutes conferring subject-matter jurisdiction on federal courts are to be strictly

construed.  *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).   "The burden

of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003.  With a factual attack, the moving party challenges the facts on which subject-matter jurisdiction depends. *Id.*  The Court therefore must make its own findings of fact. Id. In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)).  The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56.  *Id.*

**B.      Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his]

-4-

claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the

Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

### III.  Analysis

-6-

## A.      Declaratory Relief

Defendants do not raise a subject-matter jurisdiction argument pursuant to Rule 12(b)(1) in the Motion.  However, the Court must consider the question *sua sponte* when it comes to the Court's attention that the Court may lack jurisdiction over the matter. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009).   Accordingly, the Court first considers whether it has subject-matter jurisdiction over Plaintiff's claims.   *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998).  The DJA explicitly incorporates the case or controversy requirement of the Constitution by stating: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."   28 U.S.C. § 2201(a).  The Court therefore considers the issue of jurisdiction pursuant to Rule 12(b)(1) with respect to Plaintiff's request for a declaratory judgment.   *See, e.g.*, *Van Deelen v. Fairchild*, No. Civ.A. 05-2017, 2005 WL 3263885, at *7 (D. Kan. Dec. 1, 2005).

To establish that a case or controversy exists, Plaintiff must demonstrate that the controversy is : (1) definite, concrete, and touches on the legal relations of the parties, and (2) sufficiently immediate and real.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  In short, "[t]he

ultimate question is whether declaratory relief will have some effect in the real world." *Van Deelen*, 2005 WL 3263885, at *7 (citing *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).  The mere fact that the plaintiff's requested relief would give the plaintiff satisfaction that he was wronged in the past does not create an actual, live controversy.  *Van Deelen*, 2005 WL 3263885, at *7 (citing *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997) (holding that the case or controversy requirement was not met because the plaintiff's requested declaratory relief was moot)).  Further, "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment . . . ."  *Van Deelen*, 2005 WL 3263885, at *7 (citing *Executive Risk Indem. Inc. v. Sprint Corp.*, 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003)).

Plaintiff seeks the following declaratory relief: (1) that Defendant Archuleta "did subject the Plaintiff to racial discrimination using an [sic] illegal discriminatory racial profiling in violation of the Equal Protection Clause;" (2) that Defendant Archuleta "did single out the Plaintiff from similarly situated offenders with specific intent to cause the Plaintiff [disparate] and harsher treatment [than] that accorded the other offenders and that it was not rationally based upon differences that were real and not illusory in violation of the Equal Protection Clause;" (3) that Defendant Archuleta "did willfully and wantonly subject the Plaintiff to verbal and written statements of injurious falsehoods to third parties that was [sic] calculated to defame the Plaintiff's reputation and character and cause damage to the Plaintiff in violation of C.R.C. 13-25-124;" and (4) that Defendants Sanchez, Miklich, and Furton "did deliberately take retaliatory actions against the Plaintiff for his exercising his protected right to petition for a redress of grievances in violation of the First Amendment."

*2nd Am. Compl.* [#41-1] at 13.

In short, therefore, Plaintiff seeks a declaratory judgment that his constitutional rights were violated. However, even if the Court were to grant his request, the declaratory judgment would not "affect[ ] the behavior of defendant[s] toward the plaintiff," because Defendants would not be required to take any course of action. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). In other words, Plaintiff is seeking a retrospective opinion that Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment. *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.").

Plaintiff's requests and the supporting allegations in the Complaint simply do not state "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Plaintiff seeks a declaration from the Court that Defendants, in the past, violated his rights:

> Plaintiff seeks declarations framed in the past tense. Even if [P]laintiff demonstrated past constitutional violations, the relief would do nothing more than give [P]laintiff the satisfaction of a declaration that in the past, [D]efendants wronged him. Retrospective declaratory relief would not impact the present or future legal relations of the parties. In this instance, declaratory relief would be hollow and fruitless.

*Van Deelen*, 2005 WL 3263885, at *8. Thus, because there is no case or controversy with regard to Plaintiff's requested declaratory relief, the Court finds that Plaintiff's requests for

declaratory relief should be dismissed for lack of subject matter jurisdiction.

Accordingly, the Court **recommends** that Plaintiff's requests for declaratory relief be **dismissed without prejudice** for lack of subject matter jurisdiction. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim"). In addition, because the only relief sought against Defendants Sanchez, Miklich, and Furton is declaratory, the Court further **recommends** that Claim Three be **dismissed without prejudice** and that Defendants Sanchez, Miklich, and Furton be **dismissed** from this action. *See id.*

Although the Court lacks subject matter jurisdiction over Plaintiff's requests for declaratory relief, Plaintiff also seeks damages in connection with Claims One, Two, and Four against Defendant Archuleta in his individual capacity. Defendants do not assert that the Court lacks jurisdiction over Plaintiff's claims for damages. They do, however, assert that Plaintiff has failed to state a claim for relief for damages, pursuant to Fed. R. Civ. P. 12(b)(6). The Court examines the sufficiency of each claim in turn.

**B.      Racial Discrimination and Equal Protection**

On March 30, 2011, the District Court *sua sponte* dismissed Plaintiff's original Complaint [#1] for frivolity. *Order of Dismissal* [#5]. On November 1, 2011, the Tenth Circuit Court of Appeals reversed, stating in part that, as the allegations in the Complaint stood, it agreed that Plaintiff had failed to adequately allege an equal protection claim. *Milligan v. Archuleta*, 659 F.3d 1294, 1296 (10th Cir. 2011). However, the Tenth Circuit

noted that it "was not persuaded, however, that amendment would necessarily be futile or that this claim was based on an indisputedly meritless legal theory." *Id.* The Tenth Circuit therefore reversed with instruction to allow Plaintiff an opportunity to file an amended complaint. *Id.*

When Plaintiff filed his Second Amended Complaint, he reasserted an equal protection claim based on allegations that he was treated differently from allegedly similarly situated inmates. *See 2nd Am. Compl.* [#41-1] at 7-8. In addition, he added a racial discrimination/equal protection claim, asserting that only white inmates and no similarly situated non-white offenders were profiled in such a way as to temporarily lose their security clearance. *See id.* at 5-6.

### 1.    Claim Two: Equal Protection

To succeed in demonstrating an equal protection violation, Plaintiff must allege that his classification as an escape risk and the pulling of his gate pass lacked a rational basis or a reasonable relation to a legitimate penological interest. *Milligan*, 659 F.3d at 1296; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Plaintiff must assert that "others, similarly situated in every material respect, were treated differently." *Rocha v. Zavaras*, 443 Fed. App'x 316, 316 (10th Cir. 2011) (internal quotation marks omitted) (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011)).

Plaintiff claims that he was not treated the same as similarly situated inmates with identical custody and security clearances assigned to access the areas containing the

maintenance department and CCI Tag Plant. *2nd Am. Compl.* [#41-1]. at 7.   Plaintiff provides the names of eleven other offenders whom he claims were identically situated to him.   *Id.*   Defendants assert that there is a legitimate penological purpose in ensuring facility and community safety by classifying inmates based on their escape risk and in revisiting those classifications in response to an inmate's successful escape. *Motion* [#44] at 9.

Inmate classification decisions by prison officials are discretionary. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  "Even though the regulations offer a list of criteria to consider, DOC officials must weight the various criteria and whatever else seems relevant in making the qualitative judgment how to classify an individual inmate." *Id.* Plaintiff must allege that the other inmates he names are "similar in every relevant respect." *See 2nd Am. Compl.* [#41-1] at 7-8; *Templeman*, 16 F.3d at 371 (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  "Not only might the DOC classify inmates differently because of slight differences in their histories, but they also might classify inmates differently because some still seem to present more risk of future misconduct than others." *Templeman*, 16 F.3d at 371.

In the Second Amended Complaint, Plaintiff provides the names of eleven other offenders whom he says "had identical custody and security clearances assigned to access the areas containing the maintenance department and CCI tag plant." *2nd Am. Compl.* [#41-1] at 7.  He states that these other named individuals were not reclassified as escape risks. *Id.*  He also alleges that he was *not* similarly situated to the escapee, Mr. Alward.  *Id.* However, Plaintiff alleges nothing about the pertinent issues here, *i.e.*, whether these inmates' backgrounds, as relevant to their reclassification as escape risks or not, are

materially similar to Plaintiff's background.  Thus, examining Plaintiff's largely conclusory allegations, which include those additional allegations that were not before the Tenth Circuit on his appeal, the Court finds that Plaintiff has not sufficiently alleged that there are not any relevant differences between himself and other inmates that could reasonably account for differential treatment.  *See id.* (stating that the plaintiff must demonstrate in the complaint that "there are no relevant differences between him and other inmates that reasonably might account for their different treatment").  Thus, despite the fact that Plaintiff filed a Second Amended Complaint after instruction by the Tenth Circuit on adequately pleading an equal protection claim, Plaintiff has not sufficiently alleged that Defendant Archuleta's reclassification decision lacked a rational basis or a reasonable relation to a legitimate penological interest.  *See Milligan*, 659 F.3d at 1296 (stating that Plaintiff's complaint must "plead facts sufficient to show that Plaintiff's classification as an escape risk lacked a rational basis or a reasonable relation to a legitimate penological interest").

Accordingly, the Court **recommends** that Plaintiff's equal protection claim based on a class of similarly situated inmates (Claim Two) be **dismissed without prejudice**.  *See Brereton*, 434 F.3d at 1219.

### 2.    Claim One: Racial Discrimination

#### a.    42 U.S.C. § 1981

Plaintiff also brings a racial discrimination claim pursuant to 42 U.S.C. § 1981 and/or 42 U.S.C. § 1983 (see discussion *infra*).  *2nd Am. Compl.* [#41-1] at 3.  Pursuant to 42 U.S.C. § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

A prima facie case of discrimination pursuant to section 1981 requires a showing that: (1) "the plaintiff is a member of a protected class;" (2) "the defendant had the intent to discriminate on the basis of race;" and (3) "the discrimination interfered with a protected activity as defined" in section 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). Plaintiff meets the first element of a section 1981 claim because he alleges that he is white. *See McDonald v. Sante Fe Transp. Co.*, 427 U.S. 273, 286-87 (1976) (concluding that section 1981 affords protection from racial discrimination to both non-whites and whites).

Turning to the second element, the "essential legal requirement of an intent to discriminate" invokes two interlinked principles. *See Roe ex rel. Roe v. Keady*, 329 F.3d 1188, 1191 (10th Cir. 2003). The first principle is "the requirement of *intentional* conduct." *See id.* (emphasis in original). The second principle is the requirement that the conduct be "imbued with or directed toward an impermissible discriminatory purpose, which 'implies more than intent as volition or intent as awareness of consequences'" and, instead, "'implies that a decisionmaker singled out [the plaintiff] for disparate treatment and selected [t]his course of action at least in part *for the purpose of causing its adverse effects*.'" *See id.* at 1192 (emphasis and alterations in original) (citations omitted).

Viewing the allegations in Plaintiff's Second Amended Complaint in a light most favorable to him, there is nothing beyond Plaintiff's conclusory allegations to indicate that Defendant Archuleta's reclassification scheme was intended to intentionally target Plaintiff

or white offenders generally.  *See Hester v. Wal-Mart Stores, Inc.*, No. 03-2447-JWL, 2005 WL 2035062, at *5 (D. Kan. Aug. 22, 2005).  Plaintiff has made no allegations from which the Court can reasonably infer that Defendant Archuleta's conduct with respect to Plaintiff was "intentional" for purposes of section 1981.  *See id.*  Further, there are no allegations that Defendant Archuleta engaged in "objectively invidious discrimination," *i.e.*, that he singled out Plaintiff and identified him for reclassification for the purpose of "causing its adverse effects" on Plaintiff.  *See id.* at *6 (citing *Keady*, 329 F.3d at 1192-93).  Plaintiff's claim therefore fails on the second element, because his allegation that he was denied access to his work place for racially discriminatory reasons is both conclusory and speculative.  *See Church v. Okla. Corr. Indus.*, No. CIV-10-1111-R, 2011 WL 4376199, at *6 (W.D. Okla. Aug. 15, 2011).

Accordingly, the Court **recommends** that Plaintiff's Claim One pursuant to 42 U.S.C. § 1981 be **dismissed without prejudice**.  *See Brereton*, 434 F.3d at 1219.

### b.    42 U.S.C. § 1983

It is unclear whether Plaintiff's Second Amended Complaint attempts to bring Claim One solely pursuant to 42 U.S.C. § 1981 or also pursuant to 42 U.S.C. § 1983.  *See 2nd Am. Compl.* [#41-1] at 4-5.  The Court appropriately disregards the legal labels applied by a *pro se* plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  Although the Court interprets Claim One to bring a section 1981

claim, to the extent that Plaintiff also attempts to assert an equal protection claim here in addition to the equal protection claim he made in Claim Two, the Court makes the following determination.

As previously noted, the Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating similarly situated individuals differently. *See City of Cleburne, Tex.*, 473 U.S. at 439. Here, Plaintiff argues that he was reclassified by Defendant Archuleta as an escape risk when African-American and Hispanic inmates who were similarly situated were not so reclassified.[1]  *Response* [#50] at 6. Ordinarily in a prison context, the Court considers whether the alleged disparate treatment is "reasonably related to a [any] legitimate penological interests." *Shaw v. Murphy*, 532 U.S. 223, 225 (2001). However, because Plaintiff alleges that he was discriminated against because of a suspect classification, namely his race, the Court employs a strict scrutiny analysis. *United States v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993).

An equal protection claim involving a suspect classification involves two components. First, a plaintiff "must show that he was singled out [for punishment] while others similarly situated were not." *United States v. Johnson*, 765 F. Supp. 658, 660 (D. Colo. 1991). Second, "[a] plaintiff in an equal protection action has the burden of

---

[1] Although Plaintiff names five inmates in his Second Amended Complaint who were not designated as escape risks, he does not identify their racial backgrounds. Indeed, it is not even clear from the context that the named individuals are non-white. *See 2ⁿᵈ Am. Compl.* [#41-1] at 5. In spite of the fact that the Court must construe the filings of a *pro se* litigant liberally, the Court must not "supply additional factual allegations to round out [a *pro se* litigant's] complaint." *Haines*, 404 U.S. at 520-21; *Whitney*, 113 F.3d at 1173-74. The Court therefore may not assume that other individuals identified by Plaintiff are not white in construing Plaintiff's allegations in support of an equal protection claim. However, because Plaintiff states in his Response that these other inmates were African-American and Hispanic, the Court considers that information in determining whether to allow Plaintiff to further amend his Second Amended Complaint.

demonstrating discriminatory intent." *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). While the discriminatory intent does not need to be the sole purpose for the decision, it must be at least a motivating factor. *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996). However, "something more than speculation and conjecture is necessary for proof." *Manuel*, 992 F.2d at 276.

Plaintiff's conclusory assertion that Defendant was motivated to reclassify him on the basis of his escape risk because of his race falls short of implicating an equal protection violation. *See, e.g.*, *Howard v. Jaramillo*, 07-cv-01268-CMA-CBS, 2008 WL 5381469, at *8 (D. Colo. Dec. 22, 2008) (unpublished decision) (noting that inmate's subjective belief that he was a victim of racial discrimination is insufficient to raise equal protection violation). Plaintiff alleges that only three inmates were designated as escape risks, all of whom were white: Plaintiff, Robert Dana, and Donald Thurston. *2nd Am. Compl.* [#41-1] at 6. Plaintiff further alleges that Mr. Alward, the inmate who escaped from Sterling Correctional Facility, is also white. *Id.* at 5. However, it is not enough to assert, because a few named African-American or Hispanic inmates were not also reclassified, that this alleged fact shows a motivation to discriminate. *Otero v. Mesa Cnty. Valley Sch. Dist.*, 470 F. Supp. 326, 331 (D. Colo. 1979). The mere failure to reclassify other offenders is an insufficient basis for finding an equal protection violation. *See United States v. Moon Lake Elec. Ass'n*, 45 F. Supp. 2d 1070, 1084 (D. Colo. 1999) (citation omitted) (finding that a failure to take action against some prisoners and not others is not, standing alone, a basis for finding an equal protection violation). Further, Plaintiff does not allege that Defendant Archuleta ever acknowledged being a racist or that he made any racial remarks to Plaintiff or any other inmate. *See, e.g.*, *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (noting that

racial comments strongly suggest discriminatory motive).

Thus, even accepting the additional information regarding the five non-white inmates in Plaintiff's Response, the Court finds that Plaintiff has failed to provide more than conclusory allegations that similarly situated inmates of different races were treated differently based on the impermissible criteria of race. *See Joseph v. U.S. Fed. Bureau of Prisons*, 232 F.3d 901 (Table), 2000 WL 1532783, at *3 (10th Cir. 2000) (citing *Powells v. Minnehaha Cnty. Sheriff Dep't*, 198 F.3d 711, 712 (8th Cir. 1999)).

Accordingly, to the extent that Plaintiff attempted to assert a section 1983 claim under Claim One of his Second Amended Complaint, the Court **recommends** that it be **dismissed without prejudice**. *See Brereton*, 434 F.3d at 1219; *see also Denson v. Maufeld*, No. 09-cv-02087-WYD-KLM, 2010 WL 3835830, at *3 (D. Colo. Sept. 24, 2010) (affirming dismissal of the inmate plaintiff's equal protection racial discrimination claim when he failed to provide additional allegations in his response sufficient to support the claim).

## C.    State Law Claims

Plaintiff's Claim Four against Defendant Archuleta asserts a state law claim for defamation and "injurious falsehoods."  Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . , the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims").  Here, having recommended dismissal of Plaintiff's federal claims, the Court

further **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and that Claim Four be **dismissed without prejudice**.

### IV.  Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that Defendants' Motion [#44] be **GRANTED**, and that Plaintiff's Second Amended Complaint [#41-1] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 30, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge