IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00250-PAB-KLM

MICHAEL MILLIGAN,

Plaintiff,

v.

LOU ARCHULETA,
CHARLES SANCHEZ,
LANCE MIKLICH, and
KEVIN FURTON,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Third Amended Complaint** (Doc. #60) [Docket No. 61; Filed May 22, 2013] (the "Motion"). The Motion is referred to this Court for recommendation [#62]. On June 13, 2013, Plaintiff filed a Response [#64] in opposition to the Motion. Defendants did not file a Reply. The Court has reviewed the briefing, the case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court respectfully **recommends** that the Motion [#61] be **GRANTED** and that Plaintiff's Third Amended Complaint [#60] be **DISMISSED without prejudice**.

## I. Background

Plaintiff is a state prisoner in custody of the Colorado Department of Corrections ("CDOC"), and is presently incarcerated at Colorado Territorial Correctional Facility

("CTCF") in Canon City, Colorado. *3rd Am. Compl.* [#60] at 2. Plaintiff initiated this lawsuit *pro se* pursuant to 42 U.S.C. § 1983 on January 31, 2011. *Compl.* [#1] at 4.

According to the Third Amended Complaint, Plaintiff asserts that he worked for CTCF's maintenance department plumbing crew from April 2009 through September 24, 2010, regularly receiving excellent work ratings during that period. *3rd Am. Compl.* [#60] at 5. On August 22, 2010, CDOC inmate Douglas Alward ("Alward") escaped from Sterling Correctional Facility. *Id.* Although Mr. Alward escaped from a different facility from that in which Plaintiff is incarcerated, Defendant Lou Archuleta ("Archuleta"), the Director of Offender Services for CDOC, thereafter reevaluated all CDOC prisoners' escape risk classifications and, in that process, redesignated Plaintiff as an escape risk. *Id.*

On September 24, 2010, Plaintiff went to work and was notified that his gate pass had been pulled, which prevented him from accessing the areas in which his job was located. *Id.* at 6. He was informed that his job had not been taken from him, but that he would not be permitted in his work area until after additional security measures were installed, including an additional security perimeter fence, razor wire, and a detection system. *Id.* On October 12, 2010, Plaintiff filed a "Step One grievance" regarding his designation as an escape risk. *Id.* He alleges that, in response to his grievance, the facility job board, comprised of Defendants Charles Sanchez ("Sanchez"), Lance Miklich ("Miklich"), and Kevin Furton ("Furton"), took away his job and put him in vocational janitorial school. *Id.*

Plaintiff asserts two[1] causes of action against four CDOC employees in their

---

[1] Plaintiff additionally asserts a violation of his Fourteenth Amendment rights. *3rd Am. Compl.* [#60] at 5. The District Court has previously dismissed this claim, and instructed Plaintiff

individual capacities: (1) retaliation in violation of the First Amendment against Defendants Sanchez, Miklich, and Furton ("Claim One"); and (2) a "state tort claim of defamation and injurious falsehoods" against Defendant Archuleta ("Claim Two"). *Id.* at 6-7. Plaintiff seeks compensatory and punitive damages in addition to injunctive relief. *Id.* at 10-11.

Defendants seek dismissal of Plaintiff's entire lawsuit. *Motion* [#61]. First, they assert that qualified immunity shields Defendants Sanchez, Miklich, and Furton because Plaintiff has not stated a viable claim for retaliation in violation of the First Amendment. *Id.* at 5-8. Second, they assert that Plaintiff fails to state a claim for defamation and "injurious falsehoods" against Defendant Archuleta. *Id.* at 8-10. Third, Defendants assert that Plaintiff is not entitled to compensatory or punitive damages and must be denied injunctive relief. *Id.* at 10-12.

## II. Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d

---

not to include it in his Third Amended Complaint. *Order* [#59] at 7.

1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk*, *LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court is not a *pro se* litigant's advocate, nor shall the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct

a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts may interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

## III. Analysis

### A. Qualified Immunity

Defendants Sanchez, Miklich, and Furton argue that, to the extent Plaintiff seeks to hold them individually liable, they are entitled to qualified immunity. *Motion* [#61] at 5. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When the defense of qualified immunity is raised, the Court must consider whether Plaintiff's factual allegations demonstrate that Defendants Sanchez, Miklich, and Furton violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a court may review these factors in any order, using its discretion to determine which of the factors to review first in light of the circumstances of the case. *Id.* at 236. Because the Court finds that Plaintiff's factual allegations fail to demonstrate that Defendants Sanchez, Miklich, and Furton violated a constitutional right, the Court does not need to address whether that constitutional right was clearly established at the time of the alleged violation.

The Court first addresses whether Plaintiff sufficiently alleges that Defendants

Sanchez, Miklich, and Furton, in their individual capacities, violated a constitutional right. To survive Defendants' Motion pursuant to Rule 12(b)(6), Plaintiff need only "plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support [his] allegations." *Shero*, 510 F.3d at 1200 (citations omitted).

Plaintiff asserts that Defendants Sanchez, Miklich, and Furton removed him from his job in retaliation for "filing a grievance and exercising his First Amendment right to challenge Defendant Lou Archuleta's actions[.]" *3rd Am. Compl.* [#60] at 6. Plaintiff contends that "'but for' this act of retaliation . . . [he] would not have lost his job." *Id.* at 6. Plaintiff seeks punitive damages for this claim "jointly and severally against Defendant's [sic] Charles Sanchez, Lance Miklich, and Kevin Furton for the violation of the Plaintiff's First Amendment rights to the United States Constitution." 3rd Am. Compl. [#60] at 11. In response to Plaintiff's claims for relief, Defendants Sanchez, Miklich, and Furton argue pursuant to Fed. R. Civ. P. 12(b)(6) that Plaintiff has made only conclusory allegations based on "his personal belief that he was a victim of retaliation." *Motion* [#61] at 7. Defendants Sanchez, Miklich, and Furton state that Plaintiff "fails to allege a chronology of events," that he has not alleged that their actions had a retaliatory motive, or that removing Plaintiff from his plumbing job deviated from standard protocol. *Id.*

To state a First Amendment retaliation claim, Plaintiff must plead facts indicating: (1) that Plaintiff was engaged in constitutionally protected activity; (2) that the actions of Defendants Sanchez, Miklich, and Furton caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that Sanchez, Miklich, and Furton's adverse actions were substantially motivated by Plaintiff's exercise of constitutionally protected conduct. *Shero*, 510 F.3d at 1203. In this context,

the Supreme Court has defined "injury" to include hindrances in a prisoner plaintiff's efforts to pursue a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To prevail on the causation element of a claim for retaliation, Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)). That is, "it is imperative that [P]laintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; [P]laintiff[ ] must, rather, allege specific facts showing retaliation because of the exercise of . . . constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *accord Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Plaintiff's allegations reasonably satisfy the first element of a First Amendment claim. Filing a grievance is a constitutionally protected activity. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). Therefore, Plaintiff's filing of a "Step One grievance" challenging his designation as a potential escape risk is a protected First Amendment activity. *Id.*; *3rd Am. Compl.* [#60] at 6.

Regarding the second element, the requirement of a "chilling" injury, the Court notes that for unincarcerated citizens the loss of one's job may be such an injury. *Worrell v. Henry*, 219 F.3d 1197, 1213 (10th Cir. 2000) (holding that the loss of a job [is] sufficient to establish the second element of [a First Amendment] retaliation claim). However, "prisoners do not have a constitutional right to employment," and Plaintiff does not claim a statutory or regulatory entitlement to holding his prison job. *Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir. 1994); *3rd Am. Compl.* [#60] at 6. Therefore, Defendants Sanchez,

Miklich, and Furton did not cause Plaintiff to suffer a "chilling" injury when they removed him from his plumbing job. *See Bunner v. Koch*, No. 08-cv-00171-WYD-KLM, 2009 WL 798550, at *10 (D. Colo. Jan. 30, 2009); *3rd Am. Compl.* [#60] at 6.

Concerning the third element, the requirement that the actions be motivated by constitutionally protected activity, Plaintiff alleges that his firing was due to having filed a grievance challenging his classification as an escape risk, and that "but for" the filing, he would not have faced retaliation. *3rd Am. Compl.* [#60] at 6. Plaintiff offers no additional evidence of Defendants Sanchez, Miklich, and Furton's alleged malice against him for engaging in a constitutionally protected activity. *Id.* Plaintiff's claim that Defendants' action was in response to his engaging in protected activity is supported only by his conclusory allegations and personal beliefs. Although Plaintiff asserts that Defendant Archuleta informed him that he would be able to keep his job despite his reclassification as an escape risk, he alleges no facts demonstrating that Defendants Sanchez, Miklich, and Furton knew this, or were otherwise unjustified in removing him from work. *Id.* at 6. Plaintiff has not made a sufficient factual showing that Defendants Sanchez, Miklich, and Furton acted as they did because of the grievance, or that his removal from work was motivated by retaliation. *Id.*; *see Cooper v. Belcher*, No. 08-cv-01599-CMA-KMT, 2010 WL 3359709, at *19 (D. Colo. Aug. 25, 2010) (holding that the plaintiff's allegations were vague, unsupported, and ambiguous, and that he failed to show that the defendants' activity was in retaliation for his constitutionally protected conduct). Plaintiff does not adequately connect the loss of his job to the filing of his grievance. *3rd Am. Compl.* [#60] at 6. Plaintiff could have been fired from his work for any number of reasons. The Court cannot "consider conclusory factual allegations" as sufficient for establishing a "reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 675; *see also Frazier*, 922 F.2d at 562 n.1 ("[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). Ultimately, Plaintiff fails to "allege facts [showing] that retaliation was the animus behind . . . [D]efendant[s'] actions[.]" *Magluta v. United States Fed. Bureau of Prisons*, No. 08-cv-00404, 2009 WL 1504749, at *3 (D. Colo. May 28, 2009).

For these reasons, Plaintiff fails to state a claim against Defendants Sanchez, Miklich, and Furton for a constitutional violation. Therefore, these three Defendants are entitled to qualified immunity, and the Court respectfully **recommends** that Plaintiff's First Amendment claim against Defendants Sanchez, Miklich, and Furton be **dismissed without prejudice**. *See Baker v. Buckner*, No. 11-cv-01374-REB-KLM, 2012 WL 2524029, at *5 (D. Colo. May 5, 2012).

### B. Claim Two: State Law Claims

Plaintiff's Claim Two against Defendant Archuleta asserts a state law claim for defamation and "injurious falsehoods." *3rd Am. Compl.* [#60] at 7. Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . , the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims"). Here, the Court's jurisdiction is only based on federal question, 28

U.S.C. § 1331, and there is no indication that the Court has jurisdiction under an alternative statute. *See 3rd Am. Compl.* [#60] at 4. Thus, having recommended dismissal of Plaintiff's federal claim, the Court further **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and that Claim Two be **dismissed without prejudice**. *See West v. Ortiz*, No. 05-cv-00441-REB-MJW, 2008 WL 544735, at *12 (D. Colo. Feb. 26, 2008).

## IV. Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that Defendants' Motion [#61] be **GRANTED**, and that Plaintiff's Third Amended Complaint [#60] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated September 6, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge